# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER SALVATO and JULIE SALVATO,<br><br>                    Plaintiffs,<br>     vs.<br><br>OCWEN LOAN SERVICING, LLC, et al.,<br><br>                    Defendants. | CASE NO. 12-CV-0088 JLS (POR)<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>(ECF No. 7) |

Presently before the Court is Defendant Ocwen Loan Servicing, LLC's ("Defendant" or "Ocwen") motion to dismiss Plaintiffs' First Amended Complaint. (MTD, ECF No. 7.) Also before the Court is an opposition to that motion brought by Plaintiffs Peter Salvato and Julie Salvato ("Plaintiffs" or "Salvatos"), and Ocwen's reply. (Opp'n, ECF No. 8; Reply, ECF No. 9.) Having considered the parties' arguments and the law, the Court **DENIES** Defendant's motion to dismiss for the reasons discussed below.

//

//

# BACKGROUND[1]

The Salvatos purchased a home located at 9240 Vista Drive in Spring Valley, California ("the Property") in October 2005. At that time, they took out a loan from Defendant Secured Bankers Mortgage in the approximate amount of $460,000, secured by a Deed of Trust to the Property, to be repaid at an "adjustable rate." This loan was brokered by Defendant Regal Home Loans. On December 1, 2009, the Salvatos entered into a loan modification with the successor lender, Bank of New York Mellon ("Mellon"), through the Home Affordable Modification Program ("HAMP"). In this modification, various prior unpaid fees and amounts past due[2] were added into the loan principal, and Plaintiffs' repayment schedule was changed to a fixed rate over a 40–year term, with reduced monthly payments.

Subsequently, around late 2010 or early 2011, Defendant Ocwen "took over the servicing" of the Salvatos' loan from the prior servicer, "Saxon," at which point the loan was already apparently in default. Ocwen then attempted to collect on amounts that Plaintiffs allege are not due, which is the same approximate amount as the prior unpaid fees and amounts past due that were rolled into the new principal amount as part of the terms of the loan modification agreement. Ocwen has apparently "continued to try to collect these alleged past due payment amounts from PLAINTIFFS in addition to the principal which already contains these alleged past due payments, even though these amounts were disputed in writing by PLAINTIFFS, and even though OCWEN was notified in writing by PLAINTIFFS' counsel that PLAINTIFFS have retained counsel and that OCWEN is no longer to contact PLAINTIFFS directly regarding this alleged debt." (FAC ¶ 2.) Further, Ocwen has apparently reported this "wrongful debt information" to reporting agencies and indicated an intent to foreclose on the Property, even though Plaintiffs "dispute the amount in default alleged by OCWEN on the mortgage that was modified in December of 2009." (FAC ¶ 16.)

---

[1] Unless otherwise noted, all facts in the Background section are taken from Defendants' Notice of Removal (Notice of Removal, ECF No. 1) and Plaintiff's First Amended Complaint ("FAC," ECF No. 4.)

[2] Plaintiffs state these previous fees, sometimes called "previous foreclosure fees" or "prior penalty and service fees," total between $3,000 and $10,000, depending on the accounting. (FAC ¶ 2.)

On January 18, 2011, Plaintiffs sent Ocwen a letter by certified mail to notify Ocwen of its unfair and illegal debt collection practices, and to inform Ocwen that Plaintiffs had retained counsel for representation regarding their disputed debt.  In this letter, Plaintiffs disputed the debt in writing, requested verification of the disputed debt, and demanded Ocwen no longer contact the Salvatos directly, instead communicating with their attorney.  After that, Plaintiffs allege Ocwen made repeated collection attempts—on January 24, 2011, January 28, 2011, February 10, 2011, and March 15, 2011.  Plaintiffs then sent a second letter on April 26, 2011, informing Ocwen of the information contained in the previous letter and again demanding that Ocwen cease contacting Plaintiffs directly.  Subsequent to the second letter, Ocwen made more collection attempts—on June 17, 2011, July 9, 2011, July 12, 2011, July 22, 2011, September 13, 2011, and October 17, 2011.  At least the communication on July 9, 2011, was a letter sent by Ocwen to the Salvatos stating "NOTICE OF DEFAULT," informing the Salvatos their payments were past due and that they were in default.  The letter further stated: "Failure to bring your account current *may* result in our election to exercise our right to foreclose on your property."  (FAC ¶ 23.)

Plaintiffs filed their Complaint in state court on November 28, 2011.  Defendant Ocwen removed the case on January 11, 2012, asserting jurisdiction based on federal question and supplemental jurisdiction.  28 U.S.C. §§ 1331, 1441(b), 1367(a).  Plaintiffs filed an FAC on February 7, 2012 (ECF No. 4) and have also voluntarily dismissed Defendants Regal Home Loans and Secured Bankers Mortgage (ECF No. 5.)  The FAC states two causes of action, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  However, the second cause of action is asserted only against Defendants Regal Home Loans, Secured Bankers Mortgage, and Does 26-50.  Plaintiffs having voluntarily dismissed the two named Defendants against whom their UCL claim was brought, and not having sought leave to amend their claim to substitute Doe Defendants, the UCL claim is not at issue here.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a

1 motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and
2 sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain
3 statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not
4 require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-
5 defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
6 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's
7 obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
8 conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*,
9 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint
10 suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S.
11 at 678 (citing *Twombly*, 550 U.S. at 557).

12 "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
13 accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*,
14 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts
15 pled "allow[] the court to draw the reasonable inference that the defendant is liable for the
16 misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must
17 be probable, but there must be "more than a sheer possibility that a defendant has acted
18 unlawfully."  *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible
19 entitlement to relief.  *Id.*  (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept
20 as true "legal conclusions" contained in the complaint.  *Id.*  This review requires context-specific
21 analysis involving the Court's "judicial experience and common sense."  *Id.* at 679 (citation
22 omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere
23 possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is
24 entitled to relief.'"  *Id.*  Moreover, "for a complaint to be dismissed because the allegations give
25 rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading."
26 *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (internal quotations omitted).
27 Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court
28 determines that the allegation of other facts consistent with the challenged pleading could not

possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

## ANALYSIS

Defendant asserts that the FAC fails to state a claim upon which relief can be granted because it fails to adequately allege a violation of the FDCPA by Ocwen. Specifically, Defendant argues the FAC does not contain facts that indicate how Ocwen qualifies as a "debt collector" under the FDCPA. Further, as a "loan servicer," Ocwen states it cannot not fall within the scope of the FDCPA as a matter of law. (MTD 6-7.) Second, the FAC lacks sufficient facts regarding the source or basis for the disputed debt. (*Id.* at 7.)

The FDCPA imposes requirements on "debt collectors" for certain prohibited "debt collection" by regulating the manner in which a debt collector may contact a debtor. *See Jerman v. Carlisle, McNellie, Rini, Kramer, & Ulrich LPA*, — U.S. —, 130 S.Ct. 1605, 1608 (2010); *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1031 (9th Cir. 2009). "[T]he purpose of the FDCPA is to protect consumers broadly from improper practices and the statute is to be interpreted liberally for this purpose." *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1305 (E.D. Cal. 2009) (citing *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171, 1175 (9th Cir. 2006)). It is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (internal quotation and citation omitted). Proof of actual damages is not required for recovery under the FDCPA. *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998). To state a claim under the FDCPA, a "plaintiff must show: (1) that he is a consumer within the meaning of 15 U.S.C. §§ 1692a(3) and 1692c(d); (2) that the debt arises out of a transaction entered into for personal purposes; (3) that the defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6); and (4) that the defendant violated one of the provisions of the FDCPA, 15 U.S.C. §§ 1692a-1692o." *Gutierrez v. Wells Fargo Bank*, 2009 WL 322915, at *2 (N.D. Cal. Feb. 9, 2009) (citing *Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997)).

*A. Striking Inconsistent Allegations in Successive Pleadings*

As a preliminary matter, the Court addresses Defendant's argument that several allegations in the FAC directly contradict allegations stated in the original Complaint, and as such should be striken or discounted. (MTD 9-10; Reply 5.) Specifically, the FAC alleges that the loan was already in default at the time the debt was transferred to Ocwen, but the original Complaint stated that Plaintiffs were current on their payments at that time. (MTD 9-10.) Further, the FAC alleges Ocwen notified Plaintiffs of its intent to take further action in collecting the debt, including potentially starting the foreclosure process against Plaintiffs, but the original Complaint stated that Ocwen had "started the foreclosure process against Plaintiffs." (*Id.*) Ultimately, Ocwen concludes that, as an entity whose actions are more akin to "debt servicing" than "debt collection," it does not fall within the FDCPA's definition of "debt collector" even if the Court accepts as true the FAC's new allegations. (MTD 13-14.)

The Court declines Defendant's invitation to strike or otherwise discount the FAC's allegations as contradicting those contained in the Complaint. The Ninth Circuit has expressly held that such action by a district court is improper. *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations."). By striking or discounting the factual allegations contained in a pleading because they contradict an earlier version, courts would be improperly adjudicating a claim on the merits. This is particularly inappropriate in a legal system that allows plaintiffs to plead in the alternative, "even if the alternatives are mutually exclusive." *Id.* at 859. Instead, our legal system prioritizes prompt filing and anticipates that "some allegations fall by the wayside as legally or factually unsupported" as litigation progresses and the parties learn more. *Id.* "This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham." *Id.* Instead, it is much more likely that the parties have "learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation." *Id.*

Thus, unless a party's contradictory allegations were brought in bad faith under the procedures of Rule 11 or the party is judicially estopped from taking a later contrary position, inconsistent allegations alone do not justify striking or assessing on the merits the sufficiency of a pleading.  Moreover, the two inconsistencies Defendant points out might not conflict at all, but instead seek to clarify earlier allegations.  For example, the Salvatos explain they believe they were not in default on their loan payments (because they dispute the debt owed), as stated in the original Complaint, but that Ocwen crucially asserted the loan was in default at the time it took over the servicing of the loan, as set forth more precisely in the FAC.  (Opp'n 9-10.)  At this early stage of the proceedings, the Court is ill-suited to determine which allegations are contradictory, or which are true and which are false.  *See Ryabyshchuk v. Citibank (South Dakota) N.A.*, 2011 WL 5976239, at 3-4 (S.D. Cal. Nov. 28, 2011) ("[T]he Court is not prepared to say that the allegations in [the plaintiff's] FAC are not plausible based on a single sentence in the original complaint that might turn out to not be contradictory at all.").

### B.  "Debt Collector"

Thus, the Court must assess whether the allegations contained in the FAC, accepted as true, state a cognizable claim for relief under the FDCPA.  Defendant argues that "creditors, mortgagors and mortgage service companies are not debt collectors and are statutorily exempt from liability under the FDCPA."  (MTD 12) (quoting *Angulo v. Countrywide Home Loans, Inc.*, 2009 WL 3427179, at *5 (E.D. Cal. 26, 2009) (citing more cases)).  Accordingly, Defendant asserts it is exempt from the requirements of the FDCPA as a "loan servicer."  (MTD 13.)  The Court disagrees, finding Defendant's statement of the law to be an oversimplification and distortion as applied to the facts of this case.

Defendant is correct that the provisions of the FDCPA apply only to "debt collectors," defined in the statute as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). In setting forth this definition, the FDCPA distinguishes between debt collectors and "creditors," a distinct group "who generally are restrained by the desire to protect

their good will when collecting past due accounts." S. Rep. 95-382, at 2 (1977), *repprinted in* 1977 U.S.C.C.A.N 1695, 1696; *see also Schlegel v. Wells Fargo Bank, N.A.*, 799 F. Supp. 2d 1100 (N.D. Cal. 20111) ("Under the FDCPA, the status of debt collector or creditor is mutually exclusive.") (citing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)).  By aiming exclusively at curtailing the behavior of debt collectors, the FDCPA targets those entities that attempt to collect debts "owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6) (debt collectors), not those that "offer[] or extend[] credit creating a debt or to whom a debt is owed," *Id.* § 1692a(4) (creditors).  Examining this dichotomy further, an entity attempting to collect a debt that did not originate with that entity could fall into either category.  *Schlosser*, 323 F.3d at 536.  The deciding factor revolves around how the collection entity behaves with respect to that debt.  "If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector."  *Id.*  This distinction is important because the FDCPA is aimed at those who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." S. Rep. 95-382, at 2.

In order to distinguish these possibilities, the FDCPA uses both the purpose for which the debt was assigned and the status of the debt at the time of the assignment.  Specifically excluded from definition as a creditor is "any person to the extent that he receives an assignment or transfer of *a debt in default solely for the purpose of facilitating collection of such debt for another*." 15 U.S.C. § 1692a(4) (emphasis added).  Further, a person is not a debt collector if the collection efforts "(iii) concern[] a debt *which was not in default at the time it was obtained*." *See* 15 U.S.C. § 1692a(6)(F) (emphasis added).  Essentially, an assignee attempting to collect a debt on behalf of another is a "creditor" if the debt was not in default when assigned, but a "debt collector" if the debt was in default when assigned.  In assessing whether the debt is "in default," the Ninth Circuit has authorized courts to "look to any underlying contracts and applicable law governing the debt at issue" as well as the demands actually made by the defendant, in order to determine whether the defendant could—or did—demand payment as of the date of assignment, rather than prospectively. *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074-75 (9th Cir. 2011).  It follows

1  from the statutory scheme as a whole that such inquiry into whether the debt is "in default" at the
2  time of assignment should not depend on whether the Court ultimately finds the underlying debt to
3  be valid or invalid.  *Schlosser*, 323 F.3d at 538; *see also Baker v. G.C. Servs. Corp.*, 677 F.2d 775,
4  777 (9th Cir. 1982) ("The [FDCPA] is designed to protect consumers who have been victimized
5  by unscrupulous debt collectors, regardless of whether a valid debt actually exists.").

6   Here, the FAC alleges that Ocwen "has represented that they are a debt collection company
7  and are attempting to collect on a disputed debt stemming from the inaccurate financial
8  calculations on this mortgage performed by SAXON, the prior servicer of PLAINTIFFS' loans."
9  (FAC ¶ 6.)  Further, "[i]n or about late 2010 or early 2011, Defendant OCWEN advised
10 PLAINTIFFS that it took over the servicing of the subject loan while allegedly in default because
11 of past due payments mentioned above." (*Id.* at ¶ 14.)  Thereafter, the FAC alleges Ocwen
12 attempted to collect the disputed debt, illegally reported the wrongful debt information to reporting
13 agencies, and notified Plaintiffs of its intent to take further action, including potentially starting the
14 foreclosure process against Plaintiffs even though they disputed the debt. (*Id.* at ¶¶ 15-16.)  As to
15 the purpose for which Ocwen received the debt, the FAC states only that "MELLON is . . . alleged
16 to be the owner of the Note secured by the subject premises.  They are alleged to be the principal
17 for Defendant OCWEN."  (Compl. ¶ 5.)

18  The Court agrees with Defendant that the FAC's allegations surrounding the transfer of an
19 interest in the loan to Ocwen are vague.  For example, the FAC does not state how Ocwen
20 acquired the disputed debt, nor does it specify the date this assignment occurred beyond "late 2010
21 or early 2011."  However, particularly in light of the difficulty individuals often face in attempting
22 to discern how or why a financial institution is suddenly attempting to collect money from them,
23 the Court finds the allegations in the FAC allow the Court to draw the reasonable inference that
24 Ocwen acquired a debt in default for the purpose of collecting that debt on behalf of the principal,
25 Mellon.  Thus, Plaintiffs have adequately pled that Ocwen is a debt collector under the FDCPA,
26 and may be liable for violations thereunder.
27 //
28 //

*C. "Debt Collection"*

Along the same lines, Defendant argues Plaintiffs' claim must fail because Ocwen's acts do not constitute "debt collection" under the FDCPA, as they are "acts relating to the foreclosure of a property under a deed of trust." (Reply 7.) The Court rejects this argument as an incomplete and ultimately incorrect summary of the FAC's allegations, and an oversimplification of the law.

Although the Ninth Circuit has not directly addressed the issue, district courts in this circuit have held that "foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of . . . the FDC[P]A." *Gamboa v. Trustee Corps.*, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009); *see also Tina v. Countrywide Home Loans, Inc.*, 2008 WL 4790906, at *6 (S.D. Cal. Oct. 30, 2008); *Hulse v. Ocwen Fed. Bank*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property."). However, the reasoning set forth in *Hulse* and routinely cited by district courts in this circuit has been rejected explicitly by several other courts, including the Fourth and Fifth circuits, and limited in other circumstances. *See Johnson v. HSBC Bank USA, Nat. Ass'n*, 2012 WL 928433, at *6 (S.D. Cal. Mar. 19, 2012) (declining to dismiss a claim under the FDCPA where the plaintiff alleged more than merely foreclosure constituted violations under the statute, and noting further that many courts have registered disagreement with *Hulse*); *Albers v. Nationstar Mortg., LLC*, 2011 WL 43584, at *2 (E.D. Wash. Jan. 3, 2011) ("[O]ther courts have not applied *Hulse*'s reasoning if the defendant engaged in conduct other than simply initiating non-judicial foreclosure proceedings."); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) ("Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt.")

Here, the Court need not address whether foreclosure itself constitutes debt collection under the statute, because Plaintiffs allege specific actions taken by Defendant to collect a debt, separate and apart form foreclosure proceedings. For example, they challenge Ocwen's repeated attempts to contact them directly even after they sent one, then another notice to Ocwen challenging the debt and informing Ocwen to contact Plaintiffs' attorney instead. Defendant has

not provided the Court a convincing reason to create—or widen—a loophole in the FDCPA through which the collection of debt is exempt so long as the debt is secured by a real property interest. *Hulse* itself acknowledged that demands of payment and threats prior to or separate from foreclosure may be debt collection. *Hulse,* 195 F. Supp. 2d at 1204 ("[P]laintiffs may maintain any FDCPA claims based on alleged actions by [defendants] in collecting a debt, but may not maintain any FDCPA claims based on alleged actions made in pursuit of the actual foreclosure."). Thus, by stating Ocwen communicated with Plaintiffs to collect a debt, through Notices of Default and other continuing attempts "to try to collect on illegal and wrongful debt by direct written communication," including threats of foreclosure, the Court finds the FAC sufficiently alleges Ocwen was engaged in debt collection under the FDCPA.

### D. Disputed Debt

Lastly, Defendant argues Plaintiffs have not stated a cognizable claim because the facts pertaining to the disputed debt are too uncertain to show the source or basis for the alleged debt. According to Defendant, Plaintiffs' speculative allegations that the previous fees rolled into the prior loan modification "were somewhere . . . between $3,000 and $10,000 depending on which accountings (sic) is viewed" and that the amount Ocwen has been attempting to collect is the same approximate amount cannot support a claim for relief under the FDCPA. (MTD 15.) Plaintiffs counter that they could not possibly plead the exact amount of the debt claimed given they received "non-itemized amounts repeatedly changing, without explanation, from statement to statement from Defendant," and that this very uncertainty is "precisely the reason the Salvatos requested clarification and verification from Defendant, in writing, repeatedly. Defendant simply ignored these requests." (Opp'n 11.)

The Court disagrees with Defendant that Plaintiffs' failure to plead the specific amount of the disputed debt is fatal to their claim. There is no requirement under the FDCPA or Federal Rules of Civil Procedure that a plaintiff identify the exact amount of the disputed debt a defendant has attempted to collect in an initial pleading. Here, Plaintiffs state they sent debt validation letters on two separate dates, that Defendant failed to validate the debt, and continued to communicate directly with Plaintiffs in an attempt to collect the debt. The Court finds Plaintiffs

have pled sufficient facts to allow the reasonable inference that Defendant violated one or more provisions of the FDCPA.

## CONCLUSION

For the foregoing reasons, Defendant Ocwen's motion to dismiss Plaintiffs' First Amended Complaint is **DENIED**.

**IT IS SO ORDERED**.

DATED: July 23, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge